IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-02491- KLM

ALAINA BODI,
Individually and on behalf of all others
similarly situated,

      Plaintiff,

v.

KANDLE DINING SERVICES, INC.,

      Defendant.

---

**PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY FLSA COLLECTIVE AND RULE 23 CLASS ACTION**

---

Plaintiff, Alaina Bodi, individually and on behalf of all others similarly situated, by and through the undersigned counsel from the Wilhite & Miller Law Firm, pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Fed. R. Civ. P. Rule 23, hereby moves the Court to conditionally certify this case as an FLSA Collective Action and a Rule 23 Class Action, and in support thereof, states as follows:

## COMPLIANCE WITH LOCAL RULE 7.1(a)

In accordance with D.C.COLO.LCivR 7.1(a), Plaintiff's counsel certifies he has consulted with Defendant's counsel about this matter and Defendant opposes this Motion.

## INTRODUCTION

The Plaintiff seeks conditional certification of two classes consisting of (1) all salaried kitchen and dining hall non-exempt employees who worked for the Defendant, KANDLE Dining Services, Inc. ("KANDLE"), in camps throughout the United States from May 21, 2021 to present

("Relevant Period"), who worked more than 40 hours, but were not paid an overtime premium, and/or were not paid at least federal minimum wage for all hours worked ("FLSA Class"); and (2) all salaried kitchen and dining hall non-exempt employees who worked for the Defendant in camps throughout Colorado from May 21, 2021 to present, who worked more than 40 hours, but were not paid an overtime premium, and/or were not paid at least Colorado minimum wage for all hours worked ("Colorado Class").

The Plaintiff alleges that KANDLE violated her rights and the rights of the putative Class Members under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* the Colorado Wage Act ("CWA"), C.R.S. 8-4-101 *et seq.,* and the applicable Colorado Overtime and Minimum Pay Standards ("COMPS") Orders, 7 C.C.R. 1103-1 (2021–2022) by: (1) failing to pay them overtime premium compensation for the hours worked in excess of 40 per week; and (2) failing to pay at least federal minimum wage for all hours worked to the FLSA Class and failing to pay at least Colorado minimum wage for all hours worked to the Colorado Class. These violations were the result of KANDLE's uniform policies, practices, and procedures of paying a weekly salary plus non-discretionary bonuses at the end of employment without regard for the weekly hours worked.

Because the workers were all subject to the same illegal policies and/or practices, *i.e.,* KANDLE's unlawful decision not to provide an overtime premium for hours worked, or to ensure that its base weekly salary was sufficient for the payment of Federal minimum wage for all hours worked, they are "similarly-situated" for the purposes of conditional certification under the FLSA. *See Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1002 (10th Cir. 2001). As such,

the Court should grant conditional certification of the FLSA Class to Plaintiff. Every day of delay in the pending FLSA proceeding prejudices the rights of the putative collection action members.

The controlling question in this case is whether the Plaintiff and the FLSA Class Members were exempt from the payment of overtime and minimum wage under the FLSA. KANDLE's offer letters explicitly state: "This is a salaried position; therefore, overtime pay does not apply." Exhibit 1: Bodi Offer Letters. However, it is well established that being paid a salary is simply not enough to exempt an employee from the payment of overtime and minimum wage. *See Spradling v. City of Tulsa, Okl.*, 95 F.3d 1492, 1495 (10th Cir. 1996) ("In order to satisfy the overtime exemption for [salaried] employees, an employer must satisfy a two-part test promulgated by the DOL, the 'duties' test and the 'salary' test.").

Additionally the Plaintiff's and Colorado Class Members' claims are appropriate for class certification under Rule 23 because: (a) the Class is so numerous that joinder is impracticable; (b) there are questions of law and fact common to the Class; (c) the Plaintiff's claims are typical of the Class Members' claims; (d) the Plaintiff and her counsel are adequate representatives; (e) common questions predominate over issues affecting only individual Class Members; and (f) a class action is superior to other available methods of adjudicating the case. *See* F.R.C.P. 23(a); (b)(3). As such, the Court should conditionally certify this case as a class action, appoint Alaina Bodi as Class Representative, appoint David H. Miller and Victoria E. Guzman as Class Counsel, and authorize notice to the Class Members.

The contact information of the Class Members is in the possession of Defendant KANDLE. As part of this Motion to Conditionally Certify the Classes, Plaintiff requests that the Court order Defendant KANDLE to provide her with a list of contact information for such putative Class

Members within fourteen (14) days of the granting of this motion. Plaintiff further requests that the Court approve her proposed Notice and allow her to provide notice to the Class Members during a period of 75 days.

## RELEVANT FACTS

Defendant KANDLE provides dining services for approximately 30 camps across 14 different states each summer. ECF No. 36, Proposed Supplement to Preliminary Scheduling Order at § 4, ¶ 2. Bodi worked for KANDLE in camps in North Carolina and Colorado between May 22, 2021 and July 29, 2021. *Id.* at ¶¶ 3–5. Bodi was paid a weekly salary of $500 for services performed in North Carolina, and a weekly salary of $600 for services performed in Colorado. *Id.* at ¶ 6. As a "Dietary Lead", Bodi's job duties were to prepare food for campers, parents, and staffers who had dietary restrictions and allergies. *Id.* at ¶¶ 7–8. Bodi received a $200 per week bonus at the end of her employment in consideration for completing her contract with KANDLE. *Id.* at ¶ 9. Bodi also received lodging for the duration of her employment with KANDLE. *Id.* at ¶ 11. KANDLE did not track Bodi's hours worked. *See* Exhibit 2: Defendant's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Answer to ROG No. 4. KANDLE did not pay Bodi an overtime premium for hours worked in excess of 40 each week, and did not supplement Bodi's pay when her salary was not sufficient for federal or Colorado minimum wage. *See id.* at Answer to ROG No. 6.

Both the FLSA Class and the Colorado Class were subject to the same policies, practices, and procedures. *See id.* at Answer to ROG Nos. 4, 6–9. KANDLE's "Area Managers create a unique employee schedule for each camp, depending on available personnel, size of the camp, number of campers, and the individual needs of each camp." *Id.* at Answer to ROG No. 4.

KANDLE regularly scheduled both the putative FLSA and Colorado Class Members to work in excess of 40 hours in a week. Exhibit 3: Sample of Schedules. KANDLE did not instruct Bodi or the putative class members to log their activities or time worked. *See* Exhibit 2 at Answers to ROG Nos. 7 and 8. KANDLE paid all putative class members in the same manner: "All seasonal dining staff employees receive a weekly salary (dependent on position, experience, and location), and are eligible for a 'per week worked' bonus as well as an 'end of summer' bonus for completing the camp program." *Id.* at Answer to ROG No. 6. It was KANDLE's policy to not pay overtime to salaried employees. *See id.* at Answer to ROG No. 9; Exhibit 1. KANDLE did not supplement the putative class members' pay if their salary was not sufficient for minimum wage based on the hours worked each week. *See* Exhibit 2 at Answer to Rog No. 6.

There are at least 510 salaried kitchen and dining hall non-exempt employees who worked for the Defendant in camps throughout the United States from May 21, 2021, to present, who worked more than 40 hours, but were not paid an overtime premium, and/or were not paid at least federal minimum wage for all hours worked. ECF No. 1, Individual and Class and Collective Action Complaint at ¶ 46(a); Exhibit 2 at Answer to ROG No. 1. There are at least 40 salaried kitchen and dining hall non-exempt employees who worked for the Defendant in camps throughout Colorado from May 21, 2021, to present, who worked more than 40 hours, but were not paid an overtime premium, and/or were not paid at least Colorado minimum wage for all hours worked. ECF No. 1 at ¶ 46(b); Exhibit 2 at Answer to ROG No. 2.

## **STANDARD OF REVIEW**

Under the FLSA, an action to recover unpaid minimum wages may be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly

situated." 29 U.S.C. § 216(b). A FLSA collective action should be preliminarily certified upon a showing that the Plaintiff and putative class members are "similarly situated," *i.e.,* "allegedly victims of a single decision, policy, or schedule." *See Beall v. SST Energy Corporation,* 2016 WL 286295, 15-cv-01741-MSK-NYW (D. Colo., Jan. 25, 2016) (citing *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001)); *see also* 29 U.S.C. § 216(b). "[T]he Court determines whether to conditionally 'certify' a collective action" in the early "initial stages of an FLSA action and prior to the bulk of discovery" and, therefore, "a plaintiff's burden at this stage is a minimal one." *See id.* (citing *Boldozier v. Am. Family Mut. Ins. Co.,* 375 F.Supp.2d 1089, 1092 (D. Colo. 2005)).

For class certification, a plaintiff must show that the case "(1) satisfies each of Rule 23(a)'s prerequisites, and (2) falls under at least one of Rule 23(b)'s categories of class actions." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 913 (10th Cir. 2018). The prerequisites in Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), a class may be maintained if:

[T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "The district court must undertake a 'rigorous analysis' to satisfy itself that a putative class meets the applicable Rule 23 requirements." *Menocal*, 882 F.3d at 913. In making such a determination, however, "the district court should construe Rule 23 liberally and

resolve all doubts in favor of class certification." *Schreiber v. Nat'l Collegiate Athletic Ass'n*, 167 F.R.D. 169, 173 (D. Kan. 1996) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)).

## ARGUMENT

## I.  THE FLSA CLASS SHOULD BE CONDITIONALLY CERTIFIED

### A.  CONDITIONAL CERTIFICATION IS APPROPRIATE BECAUSE THE WORKERS ARE SIMILARLY SITUATED

Here, there can be no doubt that the Plaintiff and the proposed FLSA Class are similarly situated. As the evidence cited above makes clear, from May of 2021 through the present, it was KANDLE's policy to: (1) pay kitchen and dining hall employees on a weekly salary basis; (2) schedule kitchen and dining hall employees to work in excess of 40 hours in a week; (3) fail to monitor the weekly time worked for each kitchen and dining hall employee; (4) fail to pay overtime premiums to kitchen and dining hall employees for hours worked in excess of 40; and (5) fail to pay the difference between kitchen and dining hall employees' weekly salaries and federal minimum wage for all hours worked. To date, KANDLE has not paid the sums owed to Bodi or the putative FLSA Class Members for back minimum and overtime wages.

### B.  IF THE COURT DOES NOT CERTIFY THE COLLECTIVE, IT SHOULD ALLOW PRESUMPTIVE JOINDER UNDER *TURNER V. CHIPOTLE*

If the Court finds Plaintiff has not met the standard outlined in *Thiessen,* or that such a standard is inapplicable, the Court should still conditionally certify the class under the permissive joinder standard described by Judge Kane in *Turner v. Chipotle Mexican Grills, Inc.* 123 F. Supp. 3d 1300, 1309 (D. Colo. 2015) (recognizing that preliminary certification should follow a "permissive joinder standard" and "presumptively allow workers bringing the same statutory claim

against the same employer to join as a collective"). *See, Oldershaw v. Davita Healthcare Partners, Inc.,* No.15-cv-01964-MSK-NYW, 2017 WL 2391061, at *3-4 (D. Colo. June 1, 2017).

## II.  THE COLORADO CLASS SHOULD BE CERTIFIED

### A.  THE PROPOSED CLASS SATISFIES THE PREREQUISITES OF F.R.C.P. 23(A)

#### 1.  Numerosity

First, the Plaintiff must establish that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Tenth Circuit has stated that determining numerosity is "to be made in the particular circumstances of the case." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir.1978). "Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 384 (D. Colo. 1993). Relevant factors include "the class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and the ability of class members to institute individual lawsuits." *Colorado Cross–Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 357 (D. Colo. 1999). Courts "within the Tenth Circuit have certified classes ranging in size from tens to hundreds of thousands of class members." *Kennett v. Bayada Home Health Care, Inc.*, No. 14-CV-02005-CMA-MJW, 2018 WL 3145400, at *3 (D. Colo. June 27, 2018); *see Rex*, 585 F.2d at 435 ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class"); *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002).

Here the Colorado Class consists of at least 40 individuals, but may consist of up to 60 individuals. *See* Exhibit 2 at Answer to ROG No. 2. At the time Defendant's responses to

Plaintiff's discovery requests were due, Defendant affirmed that there were 40 class members who worked at Colorado summer camps in 2021 and 2022. *See id*. As it is once again summer camp season, and if KANDLE has not changed its practices, it can only be assumed that the class has grown by approximately 20 employees. *See id.* Defendant has not supplemented its discovery responses to date, but Plaintiff plans to request such a supplement. Thus, the Plaintiff maintains that there may be up to 60 putative Colorado Class Members, and therefore the numerosity requirement is met. However, even if there are only 40 Colorado Class Members, the other relevant factors make joinder of the Colorado Class Members impracticable.

First, the Colorado Class Members do not all live in one geographic area as most of the Colorado Class Members likely live outside of Colorado—some even live outside of the country. When employed by KANDLE, Bodi was a Wisconsin resident, living in Indiana, and was flown by KANDLE to work in North Carolina and Colorado in the span of 11 weeks. *See* Exhibit 4: Declaration of Alaina Bodi at ¶¶ 8–13. KANDLE likewise relocated the putative class members to Colorado to work on its behalf. *See id.* at ¶ 22. This is supported by KANDLE's statement that the putative class members all received travel reimbursement costs. *See* Exhibit 2 at Answer to ROG No. 6. Further, KANDLE admitted that it sponsored international workers through the J-1 visa program. *Id.* As such it is likely that the Colorado Class Members are dispersed not only across the United States, but internationally. A class that "is dispersed over several counties weighs in favor of a finding of numerosity." *Taco Bell*, 184 F.R.D. at 358.

Second, it would be impracticable for the international class members to pursue individual actions. The international class members from 2021 and 2022 likely returned to their home countries and are likely unaware of their potential claims. It is "economically unreasonable to

expect" international workers with limited access to U.S. courts to pursue their own claims against KANDLE. *See Beltran v. InterExchange, Inc.*, No. 14-CV-03074-CMA-CBS, 2018 WL 1948687, at *4 (D. Colo. Feb. 2, 2018). Therefore, joinder of all the Colorado Class Members is impracticable.

Third, while the CWA provides for attorney's fees for a successful plaintiff, the Colorado Class Members risk losing their jobs or future job opportunities by bringing suit, placing themselves in immediate financial hardship. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (Discussing why service "awards are particularly appropriate in the employment context" due to the inherent "risk of adverse actions by the employer or co-workers" in pursuing litigation.). As the Plaintiff's and each of the Colorado Class Members' claims are relatively small (wages for minimum wage and overtime for 11 weeks or less), the Colorado Class Members have little economic incentive to take such a risk. Thus, the financial resources of the Colorado Class Members limit the possibility of joinder. *Taco Bell*, 184 F.R.D. at 359.

Thus, joinder is impracticable, and therefore, the numerosity requirement is met.

### 2.   Commonality

Second, the Plaintiff must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Every question need not be common to the class as "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations omitted). However, "it is not just the presence of a common question that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Kennett*, 2018 WL 3145400, at *3 (quoting *Dukes*, 564 U.S. at 350.).

Here, there is one common question of law that affects the Plaintiff's and the Colorado Class Members' claims: whether the members of the putative class were exempt from the provisions of the Colorado Overtime and Minimum Pay Standards ("COMPS") Order as salaried employees.[1] The viability of the Plaintiff's and Class Members' claims all depend on the answer to that question. The Plaintiff contends that her and the putative class members' salaries were insufficient to exempt them from the overtime and minimum wage provisions of the COMPS Order.[2] *See* Exhibit 1 at p. 5; *see also* Exhibit 4 at ¶¶ 14–21. Furthermore, the Plaintiff contends that she and the putative class members did not perform the requisite duties under any of the salaried exempt positions in the COMPS Order. *See* 7 C.C.R. 1103-1, Rules 2.2.1–2.2.3. Further, an examination of KANDLE's records shows that the Plaintiff and the Colorado Class Members were regularly scheduled to work overtime and scheduled for so many hours that the Plaintiff's salary was insufficient for Colorado minimum wage for most weeks worked. *See* Exhibit 3 at pp. 11–15.[3] Thus, commonality is satisfied.

### 3. Typicality

Third, the Plaintiff must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of

---

[1] The burden of proving that such an exemption applies lies with the Defendant. *Chase v. Farmers Insurance Exchange*, 129 P.3d 1011, 1014–15 (Colo. App. 2004).

[2] 7 C.C.R. 1103-1, Rule 2.5 (the weekly overtime-exempt salary was $778.85 per week in 2021 and $865.38 per week in 2022).

[3] Whenever the Colorado Class Members worked more than 48.7 hours in a week, their weekly salary of $600 was insufficient for Colorado minimum wage. ($600.00/ $12.32 2021 Colorado minimum wage = 48.7 maximum hours. Exhibit 3 shows that Bodi and the putative Colorado Class Members were scheduled to work in excess of 48.7 hours in four out of the five full weeks Bodi worked in Colorado.

the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) ("typicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances.").

Here, the Plaintiff's claims are typical of the Colorado Class Members' claims as she alleges that she and other kitchen and dining hall employees in the putative class were not properly paid overtime or minimum wage as required by Colorado law during the Relevant Period. Based on the facts discussed above, it is undisputed that the Plaintiff and the Colorado Class Members:

1)   were all subject to the same pay structure;

2)   were all regularly scheduled to work in excess of 40 hours each week;

3)   were not paid an overtime premium for hours worked in excess of 40 in a week; and

4)   were not paid at least minimum wage for all hours worked each week.

Thus, as the Plaintiff was subject to the same pay structure and scheduling policies as the Colorado Class Members, the Plaintiff's claims arising out of them are typical of the claims available to the Colorado Class Members. Therefore, typicality is satisfied.

### 4.   Adequacy

Finally, the Plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and (2) will the named plaintiffs and their counsel prosecute

the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Once the plaintiff demonstrates facts to meet this initial burden, there is a presumption of adequacy, absent any evidence to the contrary. *Kennett*, 2018 WL 3145400, at *4.

Here, there are no conflicts between the Plaintiff and her counsel, and together they will fairly and adequately protect the interests of the Class. The Plaintiff does not have any conflicts of interest with the members of the class as the Plaintiff believes that the class members are entitled to the same remedies as her. *See* ECF No. 3 at ¶¶ 62–67. In pursuing those interests, the Plaintiff obtained the Wilhite & Miller Law Firm as counsel and is currently represented by David H. Miller and Victoria E. Guzman.

Plaintiff's lead counsel is an accomplished class action employment attorney with more than 40 years of experience. David Miller has litigated dozens of wage and hour class actions,[4] and he is dedicated to assuring that the Class Members obtain a fair and adequate result in this case. *See Troudt v. Oracle Corp.,* 325 F.R.D. 373, 381 (D. Colo. 2018), *amended,* No. 16-CV-

---

[4] Such actions include, *inter alia*: *Leyvas v. Sage Dentistry*, No. 18CV333524 (Den. Dist. Ct.); *Sciarcon v. Colorado Seminary*, No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile*, No. 2020CV030841 (Den. Dist. Ct.); *Williams v. Sabell's*, No. 2019CV031879 (Jefferson Dist. Ct.); *Banton v. Board of Governors of the Colorado State University*, No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC*, No. 18CV33524 (Den. Dist. Co.); *Pilmenstein v. Devereux Cleo Wallace*, No. 2017CV30319 (Jefferson Dist. Ct.); *Crepeau v. PDQ Truck, LLC*, 1:15-cv-02750-CMA-MLC (D. Colo.); *Bauer v. Glenmoor County Club*, No. 2015CV30354 (Arap. Co. Dist. Ct.); *Arteaga-Gomez v. Prestige Corporate Relocation, LLC*, No. 2015CV30175 (Den. Co. Dist. Ct.); *Ingve v. Fresenius Med. Care Dialysis Servs. Colorado, LLC,* No. 2014CV32468 (Den. Dist. Ct.); *Ortez v. United Parcel Service*, No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary*, No. 17-cv-02074 (D. Colo.); *Collins v. DKL Ventures, LLC*, No. 16-cv-00070 (D. Colo.); *Dominguez v. Wilson Roofing Division, LLC,* No. 16-cv-00177 (D. Colo.); *Bowers v. Tension International, Inc.,* 16-0562-CV (W.D. Mo.); *Price v. Sprouts Farmers Market, LLC*, No. 16-cv-00855 (D. Colo.); and *Nesbitt v. FCHN, Inc.*, No. 14-cv-0090 (D. Colo.).

00175-REB-SKC, 2019 WL 1006019 (D. Colo. Mar. 1, 2019) (noting that an attorney who has been appointed as class counsel in 17 cases is "amply qualified to act as counsel for the class"). Prior to joining the Wilhite and Miller Law Firm, Victoria Guzman was employed by the Colorado Department of Labor and Employment, where, in addition to interpreting and enforcing Colorado Wage and Hour Law, she was on the policy team tasked with drafting and implementing the COMPS Order #36, a version of which is at issue in this case. Both attorneys are knowledgeable on the applicable law, and have engaged in discovery negotiations to protect the rights of the Plaintiff and the Class Members. Thus, adequacy is satisfied.

### B. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF F.R.C.P. 23 (B)(3)

#### 1. Predominance

When determining predominance, the Court looks to whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In doing so, the Court must ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)). A class may be certified if a central issue that is common to the class predominates, even when "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quoting 7AA Charles Alan Wright, et al., Federal Practice & Procedure § 1778 (3d ed. 2005)).

As discussed above, the Plaintiff's and the Colorado Class Members' claims all turn on the answer to the question of the applicability of any of the salaried exemptions in COMPS Order. It

is undisputed that the Plaintiff and the Colorado Class Members were not paid overtime premiums, and that KANDLE's scheduling and pay policies applied equally to all Colorado Class Members. Further it is undisputed that KANDLE did not adjust the Plaintiff's and the Colorado Class Members' pay to accommodate for the requirement to pay minimum wage. Once those questions are answered, all that remains is a question of damages owed to each Class Member. Thus, predominance is satisfied.

### 2. Superiority

When determining superiority, Rule 23(b)(3) sets out four relevant factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "[T]hese factors are non-exhaustive." *Kennett*, 2018 WL 3145400, at *5. Superiority is established if class treatment "will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014) (quoting *Amchem*, 521 U.S. at 615).

The central issue of the case—whether the COMPS Order salaried employees exemptions applied to the Plaintiff and the Class Members—can and should be addressed at a single trial to determine KANDLE's liability as to all of the Colorado Class Members. Such a trial would be better than requiring every Colorado Class Member to file their own individual action for at least five reasons.

First, the amount due to each Colorado Class Member is relatively small as the owed wages are from a time period of 11 weeks or less. As such, the likelihood that the putative Colorado Class Members will be able to retain their own attorneys and fully litigate their claims individually is extremely low. If, as the Plaintiff alleges, KANDLE committed wage theft against all of the Class Members, the interests of justice weigh in favor of allowing their wage claims to be decided on a class-wide basis, instead of permitting KANDLE to avoid liability to the absent Class Members.

Second, the undersigned counsel are not aware of any class member having expressed or demonstrated any interest in controlling their own separate action or commencing any such action. Nor, in light of the relatively modest individual damages, are Class Members likely to do so.

Third, trying this case as a class action will serve the interest of judicial efficiency. The Court can determine the central questions related to KANDLE's liability on a class basis and then, if necessary, address individual damages questions by considering expert and/or representative evidence, by holding a separate hearing on damages, or by appointing a special master to determine each class member's damages. Denial of class certification would necessitate the filing of dozens of different lawsuits by KANDLE's workers with substantially similar claims, which would be both inefficient and unfair to the Class Members.

Fourth, concentrating litigation in this case is desirable because the Plaintiff's counsel have already devoted a substantial amount of time and resources to investigating the Class Members' claims. Moreover, the Plaintiff's lead counsel is a highly experienced wage and hour class action attorney who is dedicated to pursuing this case for the putative class. Furthermore, given the statute of limitations, many, if not all, of the Class Members may never recover the wages owed to them if this litigation does not move forward on a class-wide basis.

Fifth, undersigned counsel is not aware of any special difficulties that would prevent this Court from deciding this case as a class action.

Thus, superiority is satisfied. As all of the prerequisites under Rules 23(a) and 23(b)(3) are satisfied, the Court should certify this case as a class action. Additionally, because the Plaintiff's claims are typical of the putative class and because the Plaintiff is an adequate representative, the Court should appoint the Plaintiff as a Class Representative.

### C. The Court Should Appoint the Plaintiff's Counsel as Class Counsel

Pursuant to Rule 23(g), when a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(g). In making that appointment, the Court must consider:

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).

As discussed above, Plaintiff's counsel have engaged in discovery and independent research in pursuing the class member's claims, are both knowledgeable about the applicable law, and Plaintiff's lead counsel has extensive experience handling wage and hour class claims in both state and federal court. Moreover, the Wilhite & Miller Law Firm is experienced in handling class action lawsuits and is ready and willing to commit the time and resources necessary to pursue all potential claims the Class Members have and to ensure that Class Members receive proper notice, including hiring an experienced class administrator to mail, email, and text notice to Class Members and conducting skip tracing to locate Class Members. Plaintiff's counsel is currently seeking quotes from two previously used, highly experienced administrators, and will select the

administrator who is able to provide the best notice to the Class Members in this most cost-efficient way. Thus, the Court should appoint the undersigned counsel as Class Counsel.

## III. THE COURT SHOULD AUTHORIZE NOTICE TO THE CLASS MEMBERS

Rule 23(c)(2) provides:

For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, . . . . The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Further, pursuant to the FLSA, Notice must accurately and simply describe the rights and obligations of all parties. *See Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

The Plaintiff has prepared Notice, Opt-out and Consent forms (attached as Exhibits 5, 6, and 7) which fully satisfy the requirements of Rule 23(c)(2)(B) and 29 U.S.C. § 219(b). The Plaintiff respectfully asks that the Court allow Plaintiff's counsel to hire an administrator to send these notices via U.S. Mail, e-mail, and text message to the Class Members,[5] and to conduct skip-

---

[5] *Swanson v. Cathedral Energy Servs., Inc.*, No. 17-cv-01578, ECF No. 38 at 6 (D. Colo. Oct. 9, 2018) (attached as Exhibit 8, authorizing notice to be sent via text and e-mail).

18

tracing and other reasonable efforts to locate Class Members whose forms are returned undeliverable, during a 75-day notice period.[6]

Further, to enable Plaintiff to distribute the Notice through an administrator, Plaintiff also moves the Court for an order directing Defendant to provide the names of all KANDLE employees between May 21, 2021 and the present, with their last known addresses, phone numbers, email addresses, and dates of employment in an agreeable format for all potential class members within 14 days of any order approving this motion. Finally, Plaintiff requests a 75-day opt-in/ opt-out period from the date Notice is mailed.

## **CONCLUSION**

WHEREFORE, the Plaintiff respectfully asks that the Court to grant this Motion and:

1.      Conditionally certify the FLSA Class as a collective action pursuant to 29 U.S.C. §216(b) and *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1002 (10th Cir. 2001), or, in the alternative, allow presumptive joinder to workers bringing the same claims as Plaintiff under the standard enunciated by this Court in *Turner v. Chipotle Mexican Grill, Inc.,* 123 F. Supp. 3d 1300, 1305-09 (D. Colo. 2015);

2.      Certify the Colorado Class as a class action pursuant to F.R.C.P. 23;

3.      Order the Defendant to provide a list of all salaried kitchen and dining hall employees who worked between May 21, 2021 to the present, but were not paid an overtime premium for hours worked in excess of 40 hours in a week and/or paid minimum wage for all hours worked, and include their names, last known addresses, email addresses, telephone numbers,

---

[6] The Plaintiff respectfully asks that the Defendant be required to pay the costs of administration.

dates of work, location of work, dates of birth, social security numbers, or if foreign nationals, passport numbers and home country addresses and telephone numbers and email addresses;

(3) Authorize the Plaintiff to hire an administrator to mail and email (and/or text) the attached Notice, opt-out, and consent forms to all individuals whose information is provided by the Defendant;

(4) Order a seventy-five (75) day period, to begin on the date that the Notice is mailed, for each putative class member to opt in to or opt out of the case;

(5) Authorize the Administrator to mail, email, or text a reminder notice to potential class members thirty (30) days before the notice period ends;

(6) Designate Plaintiff Alaina Bodi to serve as the representative of the classes;

(7) Approve the Plaintiff's counsel to serve as counsel for the classes; and

(8) Grant such other relief the Court deems just and proper.

Respectfully submitted this 22nd day of June, 2023.

_David H. Miller_
David H. Miller, Esq.
Victoria E. Guzman, Esq.
THE WILHITE & MILLER LAW FIRM
1600 Ogden Street
Denver, Colorado 80218
Telephone: 303-839-1650
E-mail: DHMiller@wilhitelawfirm.com
         VGuzman@wilhitelawfirm.com

Counsel for Alaina Bodi, individually
and on behalf of all others similarly situated

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on this 22nd day of June, 2023 , I electronically filed the foregoing Motion through the Court's CM/ECF System, which automatically generated a copy of this document to all counsel of record in this case.

*<u>/s/ Leroy Moya</u>*
Leroy Moya
