IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-02491- KAS

ALAINA BODI,
Individually and on behalf of all others
similarly situated,

      Plaintiff,

v.

KANDLE DINING SERVICES, INC.,

      Defendant.

_____

## JOINT MOTION TO CERTIFY CLASS FOR SETTLEMENT PURPOSES, TO PRELIMINARILY APPROVE CLASS AND COLLECTIVE ACTION SETTLEMENT, AND TO AUTHORIZE NOTICE TO SETTLEMENT CLASS

Plaintiff, Alaina Bodi ("Bodi") and the Defendant, KANDLE Dining Services, Inc. ("KANDLE") ("the Parties"), through their respective counsel of record, hereby jointly move the Court to certify the Settlement Class described herein, to preliminarily approve the Parties' Class and Collective Action Settlement ("Settlement") contained in the Settlement Agreement attached to this Motion as Exhibit 1, to authorize notice to the Settlement Class attached as Exhibit 2 to this Motion, and to set a time before the Court for a Final Fairness Hearing and for the filing of motions and the like related to that hearing. Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned counsel certify that this Motion is being filed on behalf of all Parties.

## <u>INTRODUCTION</u>

This putative wage and hour class and collective action centers around two issues of Colorado and federal law: (1) whether KANDLE's salaried kitchen and dining hall

employees who worked in camps were paid appropriately under Colorado and federal wage and hour laws; and (2) whether this Court has jurisdiction over a nationwide class under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*[1]

Bodi alleges that KANDLE maintained a policy through which it failed to pay minimum wage and overtime to its salaried kitchen and dining hall employees who worked more than 40 hours a week in camps throughout the United States ("Class Members") in violation of both the FLSA and the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Order, 7 C.C.R. 1103-1, (collectively "Colorado Wage and Hour Law"). Bodi maintains that KANDLE was required to pay: (1) at least federal minimum wage for all hours worked in a workweek and an overtime premium for hours worked in excess of 40 in a workweek to all salaried kitchen and dining hall employees who worked for KANDLE in summer camps throughout the United States between May 21, 2020 and the present ("FLSA Class"); and (2) at least Colorado minimum wage for all hours worked in a workweek and an overtime premium for hours worked in excess of 40 in a workweek to all salaried kitchen and dining hall employees who worked for KANDLE in camps throughout Colorado from May 21, 2020 to present ("Rule 23 Class"). Bodi additionally maintains that this Court does have jurisdiction over a nationwide class, and as an individual who worked for KANDLE in more than one state during the relevant period, she has standing to represent the interests of a nationwide class. *See generally* ECF No. 22.

---

[1] There is a Circuit Court split on this issue, and the 10th Circuit has yet to take a position. The Parties have briefed the issue, but this Court has yet to issue a ruling. *See* ECF Nos. 14, 22, 31, 34, and 35.

KANDLE argues that its pay policies and actions it took in relation to Plaintiff and the proposed class were proper and lawful under both the FLSA and Colorado Wage and Hour Law because its salaried dining staff employees were properly classified as exempt employees under the FLSA and Colorado Wage and Hour Law. KANDLE also argues that under *Bristol-Myers Squibb*, this Court lacks jurisdiction over nonresident Plaintiffs who did not work for Kandle in the state of Colorado and whose claims do not arise out of Defendant's activities in the forum state. KANDLE denies that it deprived Plaintiff or any other putative class member of any wages owed.

The Parties have agreed to settle the Plaintiff's and the Settlement Class Members' claims in exchange for a total settlement payment of $777,500.00 to the Settlement Class. As described below, the Court should certify the Settlement Class for settlement purposes because the Rule 23 Class satisfies the prerequisites and requirements of Fed. R. Civ. P. 23 and the FLSA Collective Action Class satisfies the requirements of 29 U.S.C. § 216(b). The Court should preliminarily approve the Settlement because it is "fair, reasonable, and adequate" under the standards applicable in the Tenth Circuit. Fed. R. Civ. P. 23(e)(2); *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The Court should also approve the notice, consent form, and opt-out form attached as Exhibits 2, 3, and 4 and authorize the Settlement Administrator to send those documents to the Settlement Class Members.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    SUMMARY OF THE LITIGATION

On September 23, 2022, Bodi initiated this action by filing a Complaint in the United States District Court for the District of Colorado alleging that KANDLE violated the FLSA

and Colorado Wage and Hour Law by: (1) paying Bodi and the FLSA Collective Action Members on a salary basis that resulted in KANDLE's failure to pay at least federal minimum wage for all hours worked, or an overtime premium for hours worked in excess of 40 in a week; and (2) paying Bodi and the Rule 23 Class Members on a salary basis that resulted in KANDLE's failure to pay at least Colorado minimum wage for all hours worked, or an overtime premium for hours worked in excess of 40 in a week. ECF No. 1.

Approximately 1,000 individuals worked for KANDLE as salaried kitchen and dining hall employees in camps across the United States during the period relevant to this action, May 21, 2020 to present, and are thus potential FLSA Collective Action Members. Of those 1,000 individuals, approximately 80 individuals worked for KANDLE in camps in Colorado, and are thus also potential Rule 23 Class Members.

KANDLE filed a Partial Motion to Dismiss asserting that this Court lacked personal jurisdiction over Bodi's putative nationwide collective claims under the FLSA. *See* ECF No. 14. Bodi responded and KANDLE filed its Reply. *See* ECF Nos. 22 and 31. Bodi filed a motion requesting oral argument on Defendant's Partial Motion to Dismiss. ECF No. 34. The Court denied Bodi's motion, but has yet to issue a ruling on the Defendant's Partial Motion to Dismiss. *See* ECF No. 35. Notably, there is a Circuit Court split on the issue of personal jurisdiction over a nationwide class, and the 10th Circuit has yet to take a position. Within the 10th Circuit, there is a single recommendation on the issue from Magistrate Judge Varholak, determining that the Court had personal jurisdiction over a nationwide class and that company-wide notice, regardless of where the work was performed, was appropriate for all putative class members. *Warren v. MBI Energy Services, Inc.*, No. 19-CV-00800-RM-STV, 2020 WL 937420, at *7 (D. Colo. Feb. 25,

2020), *report and recommendation adopted in part*, No. 19-CV-00800-RM-STV, 2020 WL 5640617 (D. Colo. Sept. 22, 2020). Judge Moore adopted the recommendation, but on other grounds, leaving the issue of personal jurisdiction over a nationwide class unsettled in the 10th Circuit. *See Warren v. MBI Energy Services, Inc.*, No. 19-CV-00800-RM-STV, 2020 WL 5640617, at *2–3 (D. Colo. Sept. 22, 2020).

The Parties engaged in written discovery and a full day of in person mediation. Prior to and during mediation, the Parties' counsel held in-depth conversations about the possibilities for resolving the case, which resulted in the Settlement reflected in the Settlement Agreement attached to this Motion as Exhibit 1. Bodi has agreed to the Settlement based on the risk and delay associated with the "serious questions of law" that place the outcome of this litigation in doubt. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016) (factors to be determined in deciding whether to approve class action settlement). KANDLE has entered into the Settlement without admitting any wrongdoing or liability and for the sole purpose of avoiding the cost of continuing litigation.

## II.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

The Parties stipulate that the following two Classes (collectively "Settlement Class Members") should be certified for the purposes of effectuating the Settlement:

> FLSA Collective Action Class
>
> All salaried kitchen and dining hall employees who worked for KANDLE Dining Services, Inc. at any camp location in the United States between May 21, 2020, and the Effective Date of the

Settlement Agreement, who timely file a FLSA Opt-in Form indicating their intention to opt-in to this action.

Rule 23 Class

All salaried kitchen and dining hall employees who worked for KANDLE Dining Services, Inc. in camps throughout Colorado between May 21, 2020, and the Effective Date of the Settlement Agreement.

The Parties also stipulate to the appointment of Bodi as the class representative, and the attorneys at the Wilhite & Miller Law Firm as Class Counsel.

### B. Relief to Settlement Class Members

Under the Parties' Settlement Agreement: (1) KANDLE will pay a total settlement payment of $777,500.00 to resolve the Settlement Class Members' claims that were brought or could have been brought in this action; and (2) KANDLE will additionally compensate the Settlement Administrator which will disburse those funds and provide a final accounting for the Parties and the Court.

The total settlement payment will be distributed to the approximately 1,000 Settlement Class Members on a pro rata basis based on the number of workweeks each Class Member worked during the relevant period. To account for the dual claims and enhanced rights pursuant to Colorado Wage and Hour Law, the individuals who are both FLSA Collective Action Class Members and Rule 23 Class Members will have their total workweeks calculated by adding the number of workweeks they worked in Colorado to the total number of workweeks they worked in any state in the United States, inclusive of Colorado, during the relevant period. Class Counsel plan to seek a Service Award of $15,000.00 to Bodi for her time, efforts, and personal risk undertaken on behalf of the

Settlement Class Members and attorney's fees and costs of approximately 1/3 of the total settlement payment, less the Service Award.

### C. PROPOSED NOTICE, EXCLUSION, AND OBJECTION PROCEDURES

KANDLE has retained CAC Services Group, LLC ("CAC"), to serve as Settlement Administrator. CAC is a highly regarded, nationwide class action settlement company with extensive experience administering wage and hour class actions. KANDLE has agreed to pay CAC's fees directly, as opposed to deducting those fees from the total settlement amount.

The Parties have jointly drafted the Notice, Consent Forms, and Opt-Out Forms ("Notices") filed as Exhibits 2, 3, and 4 to send to the Settlement Class Members.

Subject to the Court's approval, the Parties anticipate that notice will proceed as follows:

(1) Within 7 days of preliminary approval, KANDLE will provide the Settlement Administrator with a list containing the most recent contact information, including last known physical addresses, phone numbers, e-mail addresses, Whatsapp numbers, the last four digits of their Social Security Number, and if a foreign national, their Passport number and country of origin, for all of the Settlement Class Members, to the extent KANDLE possesses or has access to this information;

(2) The Settlement Administrator will send the Notices approved by the Court to all Settlement Class Members via their available methods of contact within 14 days of preliminary approval;

(3) The FLSA Collective Action Members will have 75 days from the date on which the Notices are sent to opt-in and consent to join the settlement. Instructions on how to opt-in are contained in the attached Notices;

(4) The Rule 23 Class Members will have 75 days from the date on which the Notices are sent to opt out of, object to, or remain in the Settlement. Instructions on how to opt out or object are contained in the attached Notices;

(5) The Settlement Administrator will conduct skip tracing and other efforts in conformity with the standards of the class administration industry to locate any Settlement Class Members whose Notices are returned undeliverable;

(6) On the 31st day after mailing, the Settlement Administrator will provide counsel for the Parties with a list of the names and known contact information for all potential FLSA Collective Action Members who had not yet returned the signed Consent Form. Class Counsel will attempt to find and confirm updated contact information for the identified individuals and provide it to Defendant's counsel and the Settlement Administrator.

(7) The Settlement Administrator will send a second round of the Notices to any Settlement Class Member whose Notices were initially returned undeliverable, and for whom an alternate address was located through its skip tracing and other efforts, or through Class Counsel's efforts;

(8) A portion of the Settlement Fund is reversionary. Any amount in excess of $350,000.00 after all submitted claims have been satisfied, Bodi's Service Award has been paid, and attorney's fees and costs have been deducted, shall revert to KANDLE. If the total claimed amount is less than $350,000.00, an

amount that equals the difference between $350,000.00 and the total claimed amount will be reserved for *cy pres*;

(9) Within 14 days of the end of the 75-day notice period, the Parties will file a joint motion seeking final approval of the Settlement; and

(10)    The Parties will attend a Final Fairness Hearing on a date determined by the Court, and included in the Notices to the Settlement Class Members.

A proposed Order reflecting these procedures has been filed with this Motion.

## DISCUSSION

## I.    REQUEST TO CERTIFY FLSA COLLECTIVE ACTION CLASS FOR SETTLMENT PURPOSES

### A.  STANDARD FOR FLSA CERTIFICATION

A FLSA Collective Action should be preliminarily certified upon a showing that the Plaintiff and putative class members are "similarly situated," *i.e.,* "allegedly victims of a single decision, policy, or schedule." *See Beall v. SST Energy Corporation,* 2016 WL 286295, 15-cv-01741-MSK-NYW (D. Colo., Jan. 25, 2016) (citing *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001)); *see also* 29 U.S.C. § 216(b).

### B.  CERTIFICATION OF THE FLSA COLLECTIVE ACTION CLASS IS APPROPRIATE BECAUSE THE WORKERS ARE SIMILARLY SITUATED

Here, there can be no doubt that Bodi and the proposed FLSA Collective Action Class are similarly situated. It is undisputed that from May of 2020, through the present, it was KANDLE's policy to: (1) pay kitchen and dining hall employees on a weekly salary basis; and (2) schedule kitchen and dining hall employees to work in excess of 40 hours in a week. It is Bodi's position that this common policy and practice applicable to all Potential FLSA Collective Action Members resulted in KANDLE's failure to pay federal minimum wage and overtime premiums as required by the FLSA. In light of the common

policy and practice, nationwide, Bodi is similarly situated to the proposed FLSA Collective Action Class.

## II.    REQUEST TO CERTIFY RULE 23 CLASS FOR SETTLEMENT PURPOSES

### A. STANDARD FOR RULE 23 CERTIFICATION

A class may be certified where the prerequisites and requirements of Rule 23 have been met. The prerequisites for a class action under Rule 23(a) are that:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), a class may be maintained if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

### B. CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE BECAUSE THE RULE 23 CLASS SATISFIES THE PREREQUISITES OF F.R.C.P. 23(A)

#### 1. Numerosity

First, Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Tenth Circuit has stated that determining numerosity is "to be made in the particular circumstances of the case." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir.1978). Relevant factors include "the class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and the ability of class members to institute individual lawsuits." *Colorado Cross–Disability Coal. v. Taco*

*Bell Corp.*, 184 F.R.D. 354, 357 (D. Colo. 1999); *see Rex*, 585 F.2d at 435 ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class").

Here the Rule 23 Class consists of approximately 80 individuals. Because joinder of that many plaintiffs would be impracticable, the first prerequisite is satisfied.

### 2. Commonality

Second, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Every question need not be common to the class as "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations omitted). However, "it is not just the presence of a common question that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Kennett*, 2018 WL 3145400, at *3 (quoting *Dukes*, 564 U.S. at 350.).

Here, there is one common question of law that affects Bodi's and the Rule 23 Class Members' claims: whether the members of the putative class were exempt from the provisions of the Colorado Overtime and Minimum Pay Standards ("COMPS") Order as salaried employees. Bodi contends that her and the putative Rule 23 Class Members' salaries were insufficient to exempt them from the overtime and minimum wage provisions of the COMPS Order. In light of this common question, the second prerequisite of Rule 23(a) is met.

### 3. Typicality

Third, Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[D]iffering fact

situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) ("typicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances.").

Here, as Bodi was subject to the same salary basis pay structure and scheduling policies as the Rule 23 Class Members, Bodi's claims arising out of them are typical of the claims available to the Rule 23 Class Members. Therefore, typicality is satisfied.

### 4. Adequacy

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Once the plaintiff demonstrates facts to meet this initial burden, there is a presumption of adequacy, absent any evidence to the contrary. *Kennett*, 2018 WL 3145400, at *4.

Bodi and Class Counsel do not have any interests that are antagonistic to the Rule 23 Class. They have vigorously litigated this action, and will continue to protect the Rule 23 Class Members' interests through final approval and distribution of the Settlement. Accordingly, the fourth prerequisite of Rule 23(a) is met.

### C. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF F.R.C.P. 23 (B)(3)

#### 1. Predominance

When determining predominance, the Court looks to whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In doing so, the Court must ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)). A class may be certified if a central issue that is common to the class predominates, even when "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quoting 7AA Charles Alan Wright, et al., Federal Practice & Procedure § 1778 (3d ed. 2005)).

As discussed above, Bodi's and the Rule 23 Class Members' claims all turn on the answer to the question of the applicability of any of the salaried exemptions in the COMPS Order. This issue predominates over any issues affecting individual Rule 23 Class Members. Thus, predominance is satisfied.

#### 2. Superiority

When determining superiority, Rule 23(b)(3) sets out four relevant factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "[T]hese factors are non-exhaustive." *Kennett*, 2018 WL 3145400, at *5. Superiority is established if class treatment "will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014) (quoting *Amchem*, 521 U.S. at 615).

The undersigned are unaware of any Rule 23 Class Member having any interest in controlling the prosecution of a separate action, or having done so. Concentrating litigation in this class action is desirable because it allows each of the Rule 23 Class Members to obtain wage payments that would probably not merit individual civil litigations, and to benefit from the efficiencies of class discovery. Additionally, the undersigned counsel are unaware of any special difficulties in managing this case as a class action. Thus, superiority is satisfied.

As all of the prerequisites under Rules 23(a) and 23(b)(3) are satisfied, the Court should certify the Rule 23 Class for the purposes of settlement., appoint Bodi as the Class Representative, and appoint the attorneys from the Wilhite & Miller Law Firm as Class Counsel.[2]

---

[2] Bodi's lead counsel has a great deal of experience in handling wage and hour class actions, having litigated more than 30 such cases, including: *Leyvas v. Sage Dentistry*, No. 18CV333524 (Den. Dist. Ct.); *Sciarcon v. Colorado Seminary*, No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile,* No. 2020CV030841 (Den. Dist. Ct.); *Williams v. Sabell's,* No. 2019CV031879 (Jefferson Dist Ct.); *Banton v. Board of Governors of the Colorado State University,* No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC,* No. 18CV33524 (Den. Dist. Co.); *Pilmenstein v. Devereux Cleo Wallace,* No. 2017CV30319 (Jefferson Dist. Ct.); *Crepeau v. PDQ Truck, LLC,* 1:15-cv-02750-CMA-MLC (D. Colo.); *Bauer v. Glenmoor County Club,* No. 2015CV30354 (Arap. Co. Dist. Ct.); *Arteaga-Gomez v. Prestige Corporate Relocation, LLC,* No. 2015CV30175 (Den. Co. Dist. Ct.);

## III.    REQUEST TO PRELIMINARILY APPROVE SETTLEMENT

To be valid, a class and collective action settlement must be approved by the court. Fed. R. Civ. P. 23(e); *Pliego*, 313 F.R.D. at 127–28. When reviewing the settlement of an FLSA collective action, the Court must determine whether it is a fair and reasonable resolution. *See Pliego*, 313 F.R.D. at 127–28. When reviewing a Rule 23 class action settlement, the Court must determine whether it is fair, reasonable, and adequate. *See id.* at 128. Court's reviewing settlements of class and collective actions have assessed the following factors in determining whether to preliminarily approve the settlement: (1) whether there was a bona fide dispute in an adversarial context concerning disputed questions of law and fact; (2) whether the Parties are represented by competent and experienced counsel; (3) whether the proposed settlement was fairly and honestly negotiated; (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (5) whether the Parties think the Settlement is fair. *Pliego*, 313 F.R.D. at 128–31. All five factors are satisfied here.

### A.    THERE WAS A BONA FIDE DISPUTE IN AN ADVERSARIAL CONTEXT CONCERNING DISPUTED QUESTIONS OF LAW AND FACT

"The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement" *Id.* at 129. There is not a bona fide dispute is "a lawsuit that is

---

*Ingve v. Fresenius Med. Care Dialysis Servs. Colorado, LLC,* No. 2014CV32468 (Den. Co. Dist. Ct.); *Ortez v. United Parcel Service,* No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary,* No. 17-cv-02074 (D. Colo.); *Collins v. DKL Ventures,* LLC, No. 16-cv-00070 (D. Colo.); *Dominguez v. Wilson Roofing Division,* LLC, No. 16-cv-00177 (D. Colo.); *Bowers v. Tension International, Inc.*, 16-0562-CV (W.D. Mo.); *Price v. Sprouts Farmers Market, LLC,* No. 16-cv-00855 (D. Colo.); and *Nesbitt v. FCHN, Inc.,* No. 14-cv-0090 (D. Colo.).

objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.*

In this case, the central question is whether KANDLE's pay and scheduling polices violated federal and state minimum wage and overtime requirements.  However, before the Court could address that central question, the Court would have been required to be the first Court in the 10th Circuit to determine the issue of whether it had personal jurisdiction over the nationwide class. *See* ECF Nos. 14, 22, 31, 34, and 35. Such a determination could have reduced the FLSA Collective Action from 1000 to 80 individuals. As there is a Circuit Court split on the issue, the anticipated result was uncertain. Beyond the jurisdictional question, the Parties disputed: (1) whether KANDLE's pay practices violated federal and Colorado law; and (2) the number of hours actually worked by the putative class members.

The Parties fully briefed the jurisdictional question before the Court, and engaged in discovery related to KANDLE's pay practices, and the hours worked by the putative class. The Parties then engaged in a full day of in person mediation where each side was represented by experienced wage and hour counsel. There is a bona fide dispute between the Parties in every facet of this litigation from the number of class members Bodi may represent, whether there was even a violation of federal and/or Colorado Wage and Hour Law, and how much each putative class member might be owed, if anything. As such, the first factor is satisfied.

### B.  Both Parties are Represented by Competent and Experienced Counsel

As discussed above, Plaintiff's lead counsel has been appointed as class counsel in more than 30 wage and hour class actions. Both of Bodi's undersigned counsel

specialize in wage and hour individual and class and collective actions. Defendant's counsel is an established national law firm that specializes in representing employers in employment-related litigation, which includes wage and hour class and collective actions.

Thus, the second factor is satisfied.

### C.  THE PROPOSED SETTLEMENT WAS FAIRLY AND HONESTLY NEGOTIATED

The Settlement was fairly and honestly negotiated. *See* 313 F.R.D. at 128; *Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 2650037, at *3 (D. Colo. June 30, 2010) (settlement was fairly and honestly negotiated where the "parties entered into the agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues"). Bodi and KANDLE have vigorously litigated the issue of the Court's personal jurisdiction over a nationwide class. They engaged in a meaningful exchange of information through written discovery and a full day of in person mediation. The Parties' counsel engaged in extensive, careful arms-length negotiations. Thus, the third factor is satisfied.

### D.  THE VALUE OF AN IMMEDIATE RECOVERY OUTWEIGHS THE MERE POSSIBILITY OF FUTURE RELIEF

"[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted).

As discussed throughout this Motion, the preliminary jurisdictional issue in this case is unanswered in the 10th Circuit. The risk that the issue could eventually be decided in favor of KANDLE is a non-trivial and meaningful one. The only written decision that either Party could find on the issue of nationwide notice within the 10th Circuit was and is

Magistrate Judge Varholak's report and recommendation, which Judge Moore adopted, but on other grounds. It is likely that this issue could remain unanswered by the 10th Circuit for a substantial time. The possibility of any recovery for over 90% of the proposed FLSA Collective Action Class depends on the answer to this question.

The Settlement Class Members also risk the possibilities that: (1) they might not prevail on a dispositive motion; and (2) they might obtain little or no damages from a jury after a trial on the merits. While the salary amounts paid to each putative class member are undisputed, there are no records for the number of hours worked by each putative class member. The Parties reviewed hundreds of pages of scheduled hours for the putative class members throughout the relevant period, and while it is clear that the putative class members were regularly scheduled to work in excess of 40 hours in a workweek, the actual hours worked remain in dispute. Moreover, Bodi's records of her own time differ from her scheduled hours as some weeks she worked less hours than scheduled and others she worked more than scheduled. Furthermore, while Bodi's time records reveal she worked an average of 60 hours per week, KANDLE avers that her hours exceeded the norm as she worked at a camp with staffing issues. Thus, there is a factual dispute as to the number of hours actually worked by the putative class members.

The Settlement Fund, after the deduction of attorney's fees and Bodi's Service Award, roughly equates to back unpaid wages for the approximately 1000 Settlement Class Members if they worked about 46.5 hours each week, for 10 full workweeks each for the 2020 through 2023 summer employment periods. KANDLE in general employed the putative class members for 10 full workweeks each summer. However, as not every putative class member worked for a full 10 workweeks during the relevant period, the

Parties determined that giving each Settlement Class Member a proportionate share of the settlement fund based on the number of workweeks they worked was the best way to facilitate proper payment of owed back wages. *See German v. Holtzman Enterprises, Inc.*, No. 19-cv-03540-PAB-STV, 2023 WL 358522,at *9 (D. Colo. May 22, 2023) ("[The parties' assertion that funds will be distributed formulaically  . . and the fact that the settlement emerged from an adversarial process are sufficient to establish that class members will be adequately compensated for purposes of preliminary approval of the settlement.").

In light of these legitimate risks of litigation, the value of the Settlement, which will allow each Settlement Class Member to be paid an amount proportionate to the number of workweeks they worked during the relevant period is considerable. Therefore, the fourth factor is satisfied.

### E.  THE PARTIES AGREE THAT THE SETTLEMENT IS FAIR AND REASONABLE

As reflected in their Settlement Agreement, Bodi, Class Counsel, and KANDLE agree that the Settlement, which will provide for a proportionate payment to be paid to each Settlement Class Member for each week that they worked for KANDLE during the relevant period, is fair and reasonable. Further, the Settlement accounts for the Rule 23 Class's potential right to more recovery under Colorado wage and hour law by counting the total workweeks worked in Colorado twice in the calculation of total workweeks worked by those individuals. Class Counsel's assessment in this regard is "entitled to considerable weight." *See Lucas*, 234 F.R.D. at 695. The reasonableness of the Settlement must be considered in light of the unresolved legal issues at the center of this

action and the risk that this litigation could result in little or no recovery for the Settlement Class Members, which are discussed above.

Moreover, the proposed settlement does not undermine the purpose of the FLSA. There are approximately 1,000 putative class members who are similarly situated, and there is no indication that KANDLE has a history of noncompliance with the FLSA. Finally, as the terms of the proposed settlement agreement only contains a confidentiality provision in the event the Agreement is not approved, approval of the Agreement would become public and would alert future plaintiffs of prior allegations of KANDLE's misconduct. *See German*, No. 19-cv-03540-PAB-STV, 2023 WL 358522, at *9.

Because the Settlement was fairly and honestly negotiated; because the Parties judge the Settlement to be fair and reasonable; because serious questions of law and fact place the ultimate outcome of the litigation in doubt; and because the value of an immediate recovery outweighs the possibility of future relief, this Court should preliminarily approve the Settlement. *See Pliego*, 313 F.R.D. at 128; *Rutter*, 314 F.3d at 1188.

### F. THE SERVICE AWARD TO BODI IS REASONABLE

For their efforts as part of a class action, Named Plaintiffs are eligible for a service award payment. *See Pliego*, 313 F.R.D. at 131. Service Awards are "particularly appropriate in the employment context" as the Named Plaintiff could suffer adverse action from the former employer, co-workers, and current or future employers. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005); *see also Pliego*, 313 F.R.D. at 131.

Bodi has expended significant effort in assisting her counsel in responding to written discovery and in reviewing and evaluating the settlement offers and arguments by

KANDLE. Bodi attended a full day of mediation in person in Colorado. To accomplish such, Bodi, who resides outside of Colorado, incurred the personal expenses of a round trip flight to and from Colorado, a three-night stay in a hotel, rideshare costs between the airport, her hotel, and the mediation, meal costs, and time away from her graduate studies. The Parties stipulated that $15,000.00 is appropriate and it is similar to awards in other cases, and therefore is reasonable. *See Pliego*, 313 F.R.D. at 131–32. *See also Lucken Family Limited Partnership, LLP,* 09-cv-01543, 2010 WL 5387559, at *6 (Colo. Dec. 22, 2010).

### G. THE ATTORNEYS' FEES TO CLASS COUNSEL ARE REASONABLE

In hybrid class and collective actions, "where the Proposed Settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable." *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018). Here, Class Counsel request one-third of the settlement fund, after the Named Plaintiff's Service Award is subtracted, or $254,166.67. As such, the attorney's fees are less than one-third of the total settlement amount agreed upon by the Parties. As the requested attorney's are just under one-third of the total settlement fund, the attorneys' fees are reasonable. *See Whittington v. Taco Bell of Am., Inc.,* 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (39% of the fund awarded as fees).

## IV.    REQUEST TO AUTHORIZE NOTICE TO THE CLASS MEMBERS

Rule 23(c)(2) provides:

For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, . . . . The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if
the member so desires;
(v) that the court will exclude from the class any member who requests
exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Further, pursuant to the FLSA, Notice must accurately and simply describe the rights and obligations of all parties. *See Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

The hallmark of the notice inquiry is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted); *see Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

The Parties have prepared Notice, Opt-out and Consent forms (attached as Exhibits 2, 3, and 4) which fully satisfy the requirements of Rule 23(c)(2)(B) and 29 U.S.C. § 219(b). The Parties respectfully asks that the Court allow CAC to send these notices as outlined in Section II(C) above.[3] Accordingly, the Parties respectfully ask that the Court authorize notice to be sent to the Settlement Class Members using the Parties' forms and proposed processes.

---

[3] As more than half of the Settlement Class consists of foreign nationals, the Parties determined that Notice by way of mail, email, text, and Whatsapp, was the best way to ensure that each of the putative class members actually received Notice of the settlement.

## CONCLUSION

For all of the reasons set forth above, the Plaintiff and the Defendant respectfully ask the Court to:

1.      Certify the following two Classes for Settlement purposes:

FLSA Collective Action Class

All salaried kitchen and dining hall employees who worked for KANDLE Dining Services, Inc. at any camp location in the United States between May 21, 2020, and the Effective Date of the Settlement Agreement, who timely file a FLSA Opt-in Form indicating their intention to opt-in to this action.

Rule 23 Class

All salaried kitchen and dining hall employees who worked for KANDLE Dining Services, Inc. in camps throughout Colorado between May 21, 2020, and the Effective Date of the Settlement Agreement.

2.      Appoint Alaina Bodi as the class representative;

3.      Appoint the undersigned attorneys from the Wilhite & Miller Law Firm as Class Counsel;

4.      Approve the Notice, Consent, and Opt-out Forms attached as Exhibits 2, 3, and 4 to be sent to the Settlement Class Members;

5.      Approve CAC Services Group, LLC, as Settlement Administrator;

6.      Authorize notice to the Settlement Class and order that:

A.  The Settlement Administrator shall mail the Notices approved by the Court to all Settlement Class Members within 14 days of preliminary approval;

B.  The FLSA Collective Action Members shall have 75 days from the date on which the Notices are sent to opt-in and consent to join the Settlement;

C.  The Rule 23 Class Members shall have 75 days from the date on which the Notices are sent to opt out of, object to, or remain in the Settlement;

D.  The Settlement Administrator shall conduct skip tracing and other efforts in conformity with the standards of the class administration industry to locate any Settlement Class Members whose Notices are returned undeliverable;

E.  Class Counsel shall conduct independent research and attempt to contact and confirm contact information for FLSA Collective Action Members who had yet to return a signed Consent Form 30 days after Notices are sent;

F.  The Settlement Administrator shall perform a second mailing of the Notices to any Settlement Class Member whose Notices were initially returned undeliverable, and for whom an alternate address was located through its skip tracing and other efforts or through Class Counsel's efforts;

7.  Order the Parties to file a joint motion seeking final approval of the Settlement no later than 14 days after the termination of the notice period; and

8.    Schedule a final fairness hearing to occur no earlier than 21 days after the end of the notice period.

Respectfully submitted on this 5th day of September, 2023.

/s/ David H. Miller
David H. Miller
Victoria E. Guzman
THE WILHITE & MILLER LAW FIRM
1600 Ogden Street

Denver, Colorado 80218
303.839.1650
dhmiller@wilhitelawfirm.com
vguzman@wilhitelawfirm.com

Counsel for the Plaintiff

/s/ Ryan P. Lessmann
Ryan P. Lessmann
Evan H. Smithers
JACKSON LEWIS, P.C.
950 17th Street, Suite 2600

Denver, Colorado 80202
303.892.0404
ryan.lessmann@jacksonlewis.com
evan.smithers@jacksonlewis.com

Counsel for the Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2023 , I electronically filed the foregoing Motion through the Court's CM/ECF System, which automatically generated a copy of this document to all counsel of record in this case.

/s/ Victoria E. Guzman
Victoria E. Guzman