IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-02491- KAS

ALAINA BODI,
Individually and on behalf of all others
similarly situated,

      Plaintiff,

v.

KANDLE DINING SERVICES, INC.,

      Defendant.

_____

**JOINT MOTION SEEKING FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, SERVICE AWARD, AND COSTS OF ADMINISTRTATION AND AUTHORIZATION TO DISTRIBUTE THE CLASS AND COLLECTIVE SETTLEMENT AMOUNT**

Plaintiff, Alaina Bodi ("Bodi") and the Defendant, KANDLE Dining Services, Inc. ("KANDLE") ("the Parties"), through their respective counsel of record, hereby jointly move the Court to grant final approval of the Settlement Class, grant final approval of the $777,500.00 Settlement reflected in their Settlement Agreement, the Service Award contemplated by the Settlement Agreement, and the costs of administering the Settlement, and to authorize the Settlement Administrator to distribute the Class Settlement Amount. Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned counsel certify that this Motion is being filed on behalf of all Parties.

## INTRODUCTION

On October 6, 2023, the Court granted the Parties Joint Motion to Certify Class for Settlement Purposes, to Preliminarily Approve the Class and Collective Action

1

Settlement, and to Authorize Notice to the Settlement Class ("Preliminary Approval Motion"), which preliminarily approved of the Parties; certified the Plaintiff Class for the purposes of the Settlement; appointed Bodi as the Class Representative; appointed David H. Miller and Victoria E. Guzman as Class Counsel; approved CAC Services Group, LLC ("CAC") as the Settlement Administrator; and authorized the Settlement Administrator to distribute notice to the putative Settlement Class Members. In the Court's Order granting the Preliminary Approval Motion, the Court certified the following classes for settlement purposes only:

a.  FLSA Collective Action Class:

All salaried kitchen and dining hall employees who worked for KANDLE Dining Services, Inc. at any camp location in the United States between May 21, 2020, and the Effective Date of the Settlement Agreement, who timely file a FLSA Opt-in Form indicating their intention to opt-in to this action.

b. Rule 23 Class

All salaried kitchen and dining hall employees who worked for KANDLE Dining Services, Inc. in camps throughout Colorado between May 21, 2020, and the Effective Date of the Settlement Agreement.

The Settlement Administrator sent the Notices approved by the Court to the Settlement Class Members via mail on October 6, 2023, in accordance with the Court's Order. Ex. 1: Declaration of Jeff Johnson ("CAC Decl.), *infra.* During the week of November 22, 2023, pursuant to the Court's Order, Class Counsel sent mass emails and texts to the Settlement Class Members to verify their contact information. In response, Class Counsel learned that Notice had not been sent electronically as required by the Settlement Agreement. The Parties attended a hearing to resolve this issue and others

identified with the Notice on December 8, 2023. The Court issued a new Order, extending the Notice period to January 23, 2023, and Ordering CAC to issue notice to all Settlement Class Members in English and Spanish via mail, email, text, and Whatsapp by the end of the day, and to issue a third, electronic only notice on January 5, 2024. *See* ECF No. 60.

The Administrator sent the Notices to 686 Settlement Class Members and engaged in diligent efforts to find new addresses and re-send the Notices to Members whose Notices were returned undeliverable. Because of these efforts, all but one of the Settlement Class Members received notice of the Settlement through at least one of the methods of delivery. 165 of the FLSA Collective Action Class Members timely returned Opt-In Forms. *Id.*; *see also* Exhibit 2: Copies of Executed Opt-In Forms. One Rule 23 Class Member opted out, and no Rule 23 Class Members or FLSA Collective Action Members objected to the Settlement. *Id.*; *see also* Exhibit 3: Copy of Executed Opt-Out Form.

The Court should grant final approval of the Settlement Class and approve the Settlement because it is "fair, reasonable, and adequate" under the standards applicable in the Tenth Circuit. Fed. R. Civ. P. 23(e)(2); *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  The Settlement was fairly and honestly negotiated at arm's length between counsel who zealously and diligently represented their clients. Serious questions of law and fact were at issue, including but not limited to the issue of whether KANDLE's pay and scheduling polices violated federal and state minimum wage and overtime requirements and the procedural issue of whether the Court had personal jurisdiction over the nationwide class. Each FLSA Collective Action Class Settlement

Member stands to receive $53.75 for each week that they worked for KANDLE during the statutory period applicable to their claims, plus $50.00, to compensate them for minimum wages and overtime that the Plaintiff alleges were not properly paid pursuant to federal wage and hour law. Additionally, each Rule 23 Class Settlement Member stands to receive $53.75 for each week that they worked for KANDLE in Colorado during the statutory period applicable to their claims, plus $50.00, to compensate them for minimum wages and overtime that the Plaintiff alleges were not properly paid pursuant to Colorado wage and hour law. In light of the complexity and risks inherent in this case—including the significant risk that the Settlement Class Members could obtain zero recovery—and based on the extensive information exchanged and reviewed by the Parties over the course of the last year and a half, Class Counsel maintain that such payments are fair, reasonable, and adequate.

The Court should also approve the Service Awards contemplated by the Settlement: $15,000.00 to Alaina Bodi for her efforts and the risk she undertook, on behalf of the Settlement Class Members. This amount is well within the range of service awards that courts have held to be reasonable in similar cases. *Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) (finding that "'reasonable incentive payments' have become common for class representatives," and that a "$5,000 incentive award is comparatively on the lower end of awards deemed reasonable"); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009–10 (D. Colo. 2014) (approving $15,000 service award). The Court should also approve the Plaintiff's attorneys' fees and costs as they are also reasonable, as detailed by the separate, but

concurrent filing of the Plaintiff's Unopposed Motion for Attorneys' Fees and Costs. Finally, the Court should approve CAC's administration costs, totaling $16,500.00, pursuant to the Parties' Settlement Agreement. *See* Ex. 1, ¶ 26.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    SUMMARY OF THE LITIGATION

On September 23, 2022, Bodi initiated this action by filing a Complaint in the United States District Court for the District of Colorado alleging that KANDLE violated the FLSA and Colorado Wage and Hour Law by: (1) paying Bodi and the FLSA Collective Action Members on a salary basis that resulted in KANDLE's failure to pay at least federal minimum wage for all hours worked, or an overtime premium for hours worked in excess of 40 in a week; and (2) paying Bodi and the Rule 23 Class Members on a salary basis that resulted in KANDLE's failure to pay at least Colorado minimum wage for all hours worked, or an overtime premium for hours worked in excess of 40 in a week. ECF No. 1.

686 individuals worked for KANDLE as salaried kitchen and dining hall employees in camps across the United States during the period relevant to this action, May 21, 2020 to present and are this potential FLSA Collective Action Members.[1] Of those 686

---

[1] The Parties had previously estimated that 1,000 individuals worked for Kandle for settlement purposes, but that estimate was based on an expansion of the discovery responses where Kandle estimated that 510 individuals worked for Kandle in 2021 and 2022. Based on the responses, an estimated 250 individuals worked for Kandle each year. Upon review of Kandle's employment documents, it was discovered only 686 individuals worked for Kandle during the Relevant period, due to its limited operations in 2020 because of COVID-19 and because many of these individuals worked for Kandle in multiple years. This will result in a larger net payment to each Settlement Class Member as the total settlement amount will be distributed proportionately amongst less individuals than originally anticipated.

individuals, 51 individuals worked for KANDLE in camps in Colorado, and are thus also potential Rule 23 Class Members.

KANDLE filed a Partial Motion to Dismiss asserting that this Court lacked personal jurisdiction over Bodi's putative nationwide collective claims under the FLSA. *See* ECF No. 14. The Motion was fully briefed, but the Court denied the Motion without prejudice in light of its Order granting Preliminary Approval of the Settlement. *See* ECF Nos. 22, 31, and 57. Notably, there is a Circuit Court split on the issue of personal jurisdiction over a nationwide class, and the 10th Circuit has yet to take a position. Within the 10th Circuit, there is a single recommendation on the issue from Magistrate Judge Varholak, determining that the Court had personal jurisdiction over a nationwide class and that company-wide notice, regardless of where the work was performed, was appropriate for all putative class members. *Warren v. MBI Energy Services, Inc.*, No. 19-CV-00800-RM-STV, 2020 WL 937420, at *7 (D. Colo. Feb. 25, 2020), *report and recommendation adopted in part*, No. 19-CV-00800-RM-STV, 2020 WL 5640617 (D. Colo. Sept. 22, 2020). Judge Moore adopted the recommendation, but on other grounds, leaving the issue of personal jurisdiction over a nationwide class unsettled in the 10th Circuit. *See Warren v. MBI Energy Services, Inc.*, No. 19-CV-00800-RM-STV, 2020 WL 5640617, at *2–3 (D. Colo. Sept. 22, 2020).

The Parties engaged in written discovery and a full day of in person mediation. Prior to and during mediation, the Parties' counsel held in-depth conversations about the possibilities for resolving the case, which resulted in the Settlement reflected in the Settlement Agreement filed as ECF No. 53-1. Bodi has agreed to the Settlement based

on the risk and delay associated with the "serious questions of law" that place the outcome of this litigation in doubt. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016) (factors to be determined in deciding whether to approve class action settlement). KANDLE has entered into the Settlement without admitting any wrongdoing or liability and for the sole purpose of avoiding the cost of continuing litigation.

## II.     SUMMARY OF THE PROPOSED SETTLEMENT

### A.  RELIEF TO SETTLEMENT CLASS MEMBERS

Under the Parties' Settlement Agreement: (1) KANDLE will pay a total settlement payment of $777,500.00 to resolve the Settlement Class Members' claims that were brought or could have been brought in this action; and (2) KANDLE will additionally compensate the Settlement Administrator with funds separate and apart from the settlement amount. *See* ECF No. 53-1.

The total settlement payment will be distributed proportionately amongst the 165 FLSA Collective Action Settlement Class Members who timely opted-in and the 50 Rule 23 Class Settlement Class Members who did not exclude themselves. Each FLSA Collective Action Settlement Class Member will receive $53.75 for each workweek they worked during the relevant period, plus $50.00. Additionally, each of the Rule 23 Class Members will receive $53.75 for each workweek they worked in Colorado during the relevant period, plus $50.00. Class Counsel seek a Service Award of $15,000.00 to Bodi for her time, efforts, and personal risk undertaken on behalf of the Settlement Class Members and attorney's fees and costs of approximately 1/3 of the total settlement fund, less the Service Award.

CAC prepared the settlement calculations on behalf of the Class Members pursuant to the Settlement Agreement. However, in taking a random sample to cross check the administrator's work, Class Counsel discovered that some of the class members' calculations were off by one week as it appears that workweeks at the conclusion of employment in which only one day of work was performed, were not counted in the calculation for total workweeks. The effect of adding the workweeks would result in less money each workweek for every class member, but the addition of whatever that workweek amount would be to each of the class member's whose final workweek was not counted. Due to the nature of the formatting of Defendant's available data, to determine whether this issue only occurred to the few who were selected, or en mass, it would require weeks of the Parties' and the administrator's time to redo the calculations for all 686 potential class members. Rather than delay this case further, the Parties agreed that an equitable solution would be to add $50 to each FLSA Class Member's payout, and $50.00 to each Rule 23 Class Member's payout as this essentially adds pay for the possibility that one workweek may have been missed in the calculations. This money would be taken from the payout to the *cy pres* beneficiary.

### B.  SUMMARY OF NOTICE TO SETTLEMENT CLASS MEMBERS

On October 6, 2023, the Court approved the Notice, Opt-In, and Opt-Out Forms ("Notice") proposed in the Preliminary Approval Motion and authorized CAC to send the Notices to the Settlement Class Members during the 75-day notice period. ECF No. 56. The Notices set out: (1) the terms of the Settlement; (2) the steps Class Members needed to take to participate in, opt out of, or object to the Settlement; (3) the date, time, and

location of the Final Fairness Hearing, and how Class Members might participate in the Hearing if they chose to do so; and (4) how Class Members could obtain more information about the Settlement. *See* ECF No 53-2. In accordance with the Court's Order, CAC sent 542 Notices on October 20, 2023, via mail.[2] Ex. 1, ¶ 7. During the week of November 22, 2023, Class Counsel sent out mass emails and text messages to the putative class members to verify contact information pursuant to the Court's Order. Ex. 4: Declaration of Victoria Guzman, ¶ 7. Class Counsel received numerous responses stating that the message was the first electronic communication they had received, despite the Settlement Agreement requiring Notice to go out via mail, email, text message, and Whatsapp message. *Id.* at ¶ 10. CAC confirmed that notice was not sent out via email, text, or Whatsapp as required. In reviewing CAC's notice, Class Counsel additionally discovered that CAC failed to provide its electronic contact information for putative class members to electronically submit their opt-in and/or opt-out forms, despite the Notice explicitly stating that putative Class Members could submit their forms electronically. *Id.* at ¶ 14.

Additionally, in response to Class Counsel's communications, Class Counsel received responses in Spanish requesting the information contained in the Notice in Spanish. *Id.* at ¶ 12. As most of the putative FLSA class members are/were international workers from Spanish speaking countries, the Parties

---

[2] Due to a default in CAC's report generating system, it initially appeared to the Parties as if all 686 class members were sent Notice via mail on October 20, 2023.

agree it was an oversight to not send Notice in English and Spanish. The Parties agreed to a Spanish translation of the Notice, Opt-In, and Opt-Out Forms, as well as a Spanish and English short form notice to be sent electronically. The Parties agreed to a new Notice procedure, which would extend the Notice period to January 23, 2024, and require CAC to send electronic Notice two times, in English and Spanish, and allow Class Counsel to reach out to potential Class Members to attempt to confirm contact information one more time ("Amended Notice Procedure"). The Court approved the Amended Notice Procedure on December 8, 2023. *See* ECF No. 60. CAC sent out the Notice on December 8, 2023, via mail, text message, email, and Whatsapp. CAC conducted extensive skip tracing and re-sent Notices that were returned undeliverable throughout the 95-day Amended Notice Procedure period. Ex. 1, ¶ 10. CAC delivered 603 notices via email, 526 notices via text message, and 670 notices via Whatsapp. *Id.* at ¶¶ 11 – 13, 14. In total 685 out of the 686 potential Settlement Class Members received the Notices in at least one form. *Id.* at ¶ 21.

The Final Fairness Hearing in this matter was initially scheduled for February 21, 2024, at 1:30p.m. MST in Courtroom C-204 of the Byron G. Rogers U.S. Courthouse. Due to unanticipated issues in calculating the total weekly amount owed to each potential class member, the Parties requested to move the final fairness hearing to a later date. The final fairness hearing is currently scheduled for April 3, 2024, at 1:30p.m. in Courtroom C-204 of the Byron G. Rogers U.S. Courthouse. Notice of the Rescheduling of the Court Hearing was sent to all potential Class Members

via mail, email, text, and Whatsapp, to the extent available, on February 16, 2024.
Ex. 1, ¶¶ 24, 25.

## **DISCUSSION**

### I.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT CLASS

The Court conditionally certified the FLSA Collective Acton Settlement Class, and CAC received 165 Opt-In Forms. Additionally, as explained in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement (ECF No. 53), the proposed Rule 23 Settlement Class satisfies the prerequisites and requirements of the Fed. R. Civ. P. 23 because: (1) the Class of 51 Settlement Class Members is so numerous that joinder of all members is impracticable; (2) Bodi's allegations that the Rule 23 Settlement Class Members were not properly paid their minimum wages or overtime raise legal questions that are common to the Members of the Rule 23 Settlement Class; (3) Bodi alleges that she was subject to the policies/practices that resulted in a base wage that she contends was less than the applicable minimum and did not provide for a premium for hours worked in excess of 40 in a week, making her typical of the Class; (4) Bodi and her counsel have adequately represented the Settlement Class; and (5) issues common to the Settlement Class predominate over questions affecting only individual Class Members and a class action is the superior method of adjudicating the controversy enunciated in Bodi's Complaint. *See* ECF No. 53 at 10–14; Fed. R. Civ. P. 23(a); 23(b)(3). Under these circumstances, granting final approval of the Settlement Class is appropriate.

### II.   THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT

#### A.  STANDARD OF REVIEW

To be valid, a class and collective action settlement must be approved by the court. Fed. R. Civ. P. 23(e); *Pliego*, 313 F.R.D. at 127–28. When reviewing the settlement of an FLSA collective action, the Court must determine whether it is a fair and reasonable resolution. *See Pliego*, 313 F.R.D. at 127–28. When reviewing a Rule 23 class action settlement, the Court must determine whether it is fair, reasonable, and adequate. *See id.* at 128. Court's reviewing settlements of class and collective actions have assessed the following factors in determining whether to preliminarily approve the settlement: (1) whether there was a bona fide dispute in an adversarial context concerning disputed questions of law and fact; (2) whether the Parties are represented by competent and experienced counsel; (3) whether the proposed settlement was fairly and honestly negotiated; (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (5) whether the Parties think the Settlement is fair. *Pliego*, 313 F.R.D. at 128–31. All five factors are satisfied here.

### B. There Was a Bona Fide Dispute in an Adversarial Context Concerning Disputed Questions of Law and Fact

"The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement" *Id.* at 129. There is not a bona fide dispute in "a lawsuit that is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.*

In this case, the central question is whether KANDLE's pay and scheduling polices violated federal and state minimum wage and overtime requirements. However, before the Court could address that central question, the Court would have been required to be the first Court in the 10th Circuit to determine the issue of whether it had personal

jurisdiction over the nationwide class. *See* ECF Nos. 14, 22, 31, 34, and 35. Such a determination could have reduced the FLSA Collective Action from 686 to 51 individuals. As there is a Circuit Court split on the issue, the anticipated result was a coin toss. Beyond the jurisdictional question, the Parties disputed: (1) whether KANDLE's pay practices violated federal and Colorado law; and (2) the number of hours actually worked by the putative class members.

The Parties fully briefed the jurisdictional question before the Court, and engaged in discovery related to KANDLE's pay practices, and the hours worked by the putative class. The Parties then engaged in a full day of in-person mediation where each side was represented by experienced wage and hour counsel. There is a bona fide dispute between the Parties in every facet of this litigation from the number of class members Bodi may represent, whether there was even a violation of federal and/or Colorado Wage and Hour Law, and how much each putative class member might be owed, if anything. As such, the first factor is satisfied.

### C. BOTH PARTIES ARE REPRESENTED BY COMPETENT AND EXPERIENCED COUNSEL

Plaintiff's lead counsel has been appointed as class counsel in more than 30 wage and hour class actions.[3] Both of Bodi's undersigned counsel specialize in wage and hour

---

[3] *Leyvas v. Sage Dentistry*, No. 18CV333524 (Den. Dist. Ct.); *Sciarcon v. Colorado Seminary*, No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile,* No. 2020CV030841 (Den. Dist. Ct.); *Williams v. Sabell's,* No. 2019CV031879 (Jefferson Dist Ct.); *Banton v. Board of Governors of the Colorado State University,* No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC,* No. 18CV33524 (Den. Dist. Co.); *Pilmenstein v. Devereux Cleo Wallace,* No. 2017CV30319 (Jefferson Dist. Ct.); *Crepeau v. PDQ Truck, LLC,* 1:15-cv-02750-CMA-MLC (D. Colo.); *Bauer v. Glenmoor County Club,* No. 2015CV030354 (Arap. Co. Dist. Ct.); *Arteaga-Gomez v. Prestige Corporate Relocation, LLC,* No. 2015CV30175 (Den. Co. Dist. Ct.); *Ingve v. Fresenius Med. Care Dialysis Servs.*

individual and class and collective actions. Defendant's counsel is an established national law firm that specializes in representing employers in employment-related litigation, which includes wage and hour class and collective actions. Thus, the second factor is satisfied.

### D. THE PROPOSED SETTLEMENT WAS FAIRLY AND HONESTLY NEGOTIATED

The Settlement was fairly and honestly negotiated. *See* 313 F.R.D. at 128; *Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 2650037, at *3 (D. Colo. June 30, 2010) (settlement was fairly and honestly negotiated where the "parties entered into the agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues"). Bodi and KANDLE have vigorously litigated the issue of the Court's personal jurisdiction over a nationwide class. They engaged in a meaningful exchange of information through written discovery and a full day of in-person mediation. The Parties' counsel engaged in extensive, careful arms-length negotiations. Thus, the third factor is satisfied.

### E. THE VALUE OF AN IMMEDIATE RECOVERY OUTWEIGHS THE MERE POSSIBILITY OF FUTURE RELIEF

"[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted).

---

*Colorado, LLC,* No. 2014CV32468 (Den. Co. Dist. Ct.); *Ortez v. United Parcel Service,* No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary,* No. 17-cv-02074 (D. Colo.); *Collins v. DKL Ventures,* LLC, No. 16-cv-00070 (D. Colo.); *Dominguez v. Wilson Roofing Division,* LLC, No. 16-cv-00177 (D. Colo.); *Bowers v. Tension International, Inc.*, 16-0562-CV (W.D. Mo.); *Price v. Sprouts Farmers Market, LLC,* No. 16-cv-00855 (D. Colo.); and *Nesbitt v. FCHN, Inc.,* No. 14-cv-0090 (D. Colo.).

As discussed throughout this Motion, the preliminary jurisdictional issue in this case is unanswered in the 10th Circuit. The risk that the issue could eventually be decided in favor of KANDLE is a serious one. The only written decision that either Party could find on the issue of nationwide notice within the 10th Circuit was and is Magistrate Judge Varholak's report and recommendation, which Judge Moore adopted, but on other grounds. It is likely that this issue could remain unanswered by the 10th Circuit for a long time. The possibility of any recovery for over 90% of the proposed FLSA Collective Action Class depends on the answer to this question.

The Settlement Class Members also risk the possibilities that: (1) they might not prevail on a dispositive motion; and (2) they might obtain little or no damages from a jury after a trial on the merits. While the salary amounts paid to each putative class member are undisputed, there are no records for the number of hours worked by each putative class member. The Parties reviewed hundreds of pages of scheduled hours for the putative class members throughout the relevant period, and while it is clear that the putative class members were regularly scheduled to work in excess of 40 hours in a workweek, the actual hours worked remain in dispute. Moreover, Bodi's records of her own time differ from her scheduled hours as some weeks she worked less hours than scheduled and others she worked more than scheduled. Furthermore, while Bodi's time records reveal she worked an average of 60 hours per week, KANDLE avers that her hours exceeded the norm as she worked at a camp with staffing issues. Thus, there is a factual dispute as to the number of hours actually worked by the putative class members.

The prorated weekly amount that each FLSA Settlement Class Member will receive equates to back unpaid wages if each Settlement Class Member worked approximately 45-47 hours each week they worked, depending on their salary, for the 2020 through 2023 summer employment periods. The amount the Rule 23 Class Members will receive an additional, equal amount for each week they worked in Colorado for the 2020 through 2023 summer employment periods to account for the higher minimum wage in Colorado. The Parties have agreed that in order to account for any potential error in the calculations, it is equitable for each FLSA Settlement Class Member to receive an additional $50.00 and each Rule 23 Settlement Class Member to receive an additional $50.00. In light of these legitimate risks of litigation, the value of the Settlement, which will allow each Settlement Class Member to be paid an amount proportionate to the number of workweeks they worked during the relevant period is considerable. Therefore, the fourth factor is satisfied.

### F.  THE PARTIES AGREE THAT THE SETTLEMENT IS FAIR AND REASONABLE

As reflected in their Settlement Agreement, Bodi, Class Counsel, and KANDLE agree that the Settlement, which will provide for a proportionate payment to be paid to each Settlement Class Member for each week that they worked for KANDLE during the relevant period, is fair and reasonable. Further, the Settlement accounts for the Rule 23 Class's potential right to more recovery under Colorado wage and hour law by counting the total workweeks worked in Colorado twice in the calculation of total workweeks worked by those individuals. Class Counsel's assessment in this regard is "entitled to considerable weight." *See Lucas*, 234 F.R.D. at 695. The reasonableness of the

16

Settlement must be considered in light of the unresolved legal issues at the center of this action and the risk that this litigation could result in little or no recovery for the Settlement Class Members, which are discussed above. Finally, only one Rule 23 Class Member requested to be excluded from the settlement and no Rule 23 Class Member objected to the settlement. The positive response is further evidence the settlement is fair and reasonable. *See Aragon v. Clear Water Products LLC*, No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *3 (D. Colo. Dec. 18, 2018).

Because the Settlement was fairly and honestly negotiated; because the Parties judge the Settlement to be fair and reasonable; because serious questions of law and fact place the ultimate outcome of the litigation in doubt; and because the value of an immediate recovery outweighs the possibility of future relief, this Court should grant final approval of the Settlement. *See Pliego*, 313 F.R.D. at 128; *Rutter*, 314 F.3d at 1188.

### III.    THE NOTICE TO THE SETTLEMENT CLASS WAS PROPER

Fed. R. Civ. P. 23(e)(1)(B) requires "direct notice in a reasonable manner to all class members who would be bound" by a class action settlement. Notice is satisfactory if it "adequately apprised putative class members of the nature of the claims at issue[,]" accurately explained the consequence of the decision to not opt out, and "informed putative class members how to obtain more information about the settlement . . . ." *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir. 2020), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (Nov. 16, 2020) (quoting *Tennile v. W. Union Co.*, 785 F.3d 422, 437 (10th Cir. 2015)).

On October 6, 2023, the Court approved the Notices and notice protocol proposed in the parties' Preliminary Approval Motion. ECF No. 56. The Notice approved by the Court included all requisite information about the action and the class and properly identified opt-in and opt-out procedures and the effect of class judgment. *See* ECF Nos. 53-1 and 56. The Notice, Opt-In, and Opt-out Forms were mailed to each of the 686 Settlement Class Members on October 20, 2023, for whom mailing addresses were available. The Settlement Class Members had 75 days to investigate, confer with the Settlement Administrator and/or Class Counsel regarding any questions, consent to join the Settlement, opt out of the Settlement, or file an objection to the terms of the Settlement. Due to the transient nature of the Settlement Class, the parties agreed to electronic Notice in the forms of email, text message, and Whatsapp message, to the extent available. However, due to an oversight by the Administrator and the Parties, CAC only sent Notice by mail on October 20, 2023. During the week of November 22, 2023, Class Counsel sent mass emails and text messages to the Settlement Class Members in an attempt to confirm the contact information of those Settlement Class Members who had yet to return their consent forms. It was then learned that Notice had not been sent electronically. The Parties worked together to create a plan to fix the issues with Notice and the Court approved the Amended Notice Procedure on December 8, 2023. The Notice, Opt-In, and Opt-Out Forms were emailed to 635 of the 686 Settlement Class Members, were texted to 526 of the 686 Settlement Class Members, and were Whatsapp Messaged to 670 of the 686 Settlement Class Members on December 8, 2023, with a link to complete the Opt-In and Opt-Out Forms online. Of the 635 emails sent to Settlement

Class Members, only 32 bounced, and 603 were successfully delivered. The Notice period was extended an additional 20 days, giving the Settlement Class Members a total of 45 days to investigate, confer with the Settlement Administrator and/or Class Counsel regarding any questions, consent to join the Settlement, opt out of the Settlement, or file an objection to the terms of the Settlement from the date Notice was sent electronically. However, Class Counsel had previously contacted 295 of the 686 Settlement Class Members via text message on November 22 and 23, 2023, and 633 of the 686 Settlement Class Members via email on November 24 and 25, 2023, giving those individuals an additional 2 weeks of time to investigate and consider their rights under the Settlement. *See* Ex. 4 at ¶ 7 – 9. The Settlement Administrator additionally engaged in extensive batch tracing in order to re-mail notices that were returned as undeliverable. Only one Settlement Class Member opted out, and no Settlement Class Member filed an objection. *See* Ex. 1, ¶¶ 18 – 22. Because notice was provided to the Settlement Class Members in a reasonable manner, the requirements of Fed. R. Civ. P. 23(e)(1)(B) have been satisfied.

### IV.    THE SERVICE AWARD TO BODI IS REASONABLE AND SHOULD BE APPROVED

For their efforts as part of a class action, Named Plaintiffs are eligible for a service award payment. *See Pliego*, 313 F.R.D. at 131. Service Awards are "particularly appropriate in the employment context" as the Named Plaintiff could suffer adverse action from the former employer, co-workers, and current or future employers. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005); *see also Pliego*, 313 F.R.D. at 131. Courts generally consider the following factors in reviewing a service award: "(1) the actions that the class representative took to protect the interests of the class; (2) the

degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Id.*; *Thompson*, 2018 WL 2183988, at *3. A service award should be "proportional to the contribution of the plaintiff." *Chieftain Royalty*, 888 F.3d at 468 (citation omitted).

Bodi has expended significant effort in assisting her counsel in responding to written discovery and in reviewing and evaluating the settlement offers and arguments by KANDLE. Bodi attended a full day of mediation in person in Colorado. To accomplish such, Bodi incurred the personal expenses of a round trip flight to and from Colorado, a three-night stay in a hotel, rideshare costs between the airport, her hotel, and the mediation, meal costs, and time away from her graduate studies. The Parties stipulated that $15,000.00 is appropriate. Additionally, as it is similar to awards in other cases, it is reasonable and should be approved. *See Pliego*, 313 F.R.D. at 131–32; *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *9 (D. Colo. Apr. 22, 2015).

## V.    THE COSTS OF ADMINISTRATION SHOULD BE APPROVED

A provision requiring the settling defendants to fund a third-party class administrator is typical in class action settlements. *See Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (approving administrator for settlement notice and distribution). Depending on the nature of the case and the terms of the settlement, those administrative expenses may be very high. *See, e.g., Barr v. Qwest Commc'ns Co., LLC*, 1:01-CV-00748- WYD, 2013 WL 141565, at *3 (D. Colo. Jan. 11, 2013) (administrative costs estimated at $926,000 for over 9,400 Class Members); *Whittington v. Taco Bell of*

20

*Am., Inc.*, 10-cv-01884- KMT-MEH, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013) (administrative costs of $85,000.00). The court, in its discretion, defines the duties of the Administrator, subject to the court's equitable and Rule 23 powers. *See Horton v. Leading Edge Mktg. Inc.*, 04-CV-00212-PSF- CBS, 2007 WL 2472046, at *6 (D. Colo. Aug. 28, 2007) (Approving third party administrator with specified duties).

In this case, KANDLE proposed, and the Parties agreed to, CAC as the Settlement Administrator. *See* ECF No. 53-1 at 10. CAC's duties included, and will include: (1) sending the Notice (ECF No. 53-2), Opt-In Form (ECF No. 53-3), and Opt-out Form (ECF No. 53-4) to the Class Members in multiple formats; (2) updating the addresses of Class members whose Notice Forms are returned as undeliverable and re-sending the Notice Forms; and (3) confirming that settlement payments were timely mailed to Class members. ECF No. 51 at 17–20. CAC fully and properly executed its duties related to Notice, and has committed to disseminating the Settlement payments as required by the Settlement Agreement and any order of this Court. Ex. 1 at ¶ 27. Accordingly, the modest settlement administration costs of $16,500.00 as outlined in CAC's declaration and pursuant to the Settlement Agreement should be approved. *See id.* at ¶ 26.

## VI.    THE COURT SHOULD AUHTORIZE DISTRIBUTION OF THE NET SETTLEMENT FUND

The Parties respectfully asks the Court to authorize CAC to distribute payment to all FLSA Collective Action Members and all Participating Rule 23 Class Members in accordance with the terms of the Settlement Agreement, plus the $50 sum for each FLSA Collective Action Member and each Participating Rule 23 Class Member as agreed by

the Parties. CAC shall mail out payments to the Settlement Class and Bodi within 21 days of the Effective Date.

If a payment is returned as undeliverable, CAC is to run a batch trace to re-mail the payment and is take other reasonable steps to locate the individual to re-mail the check. Any amounts not cashed within 90 days of mailing should be paid to the *cy pres* beneficiary, Towards Justice, or revert to the Defendant pursuant to the terms of the Settlement Agreement.

## CONCLUSION

WHEREFORE, the Plaintiff and the Defendant jointly move the Court to grant final approval of the Settlement Class, grant final approval of the Parties' Settlement, inclusive of the Service Award to Bodi, Attorneys' Fees and Costs to Class Counsel, and the cost of administration, and authorize the Settlement Administrator to distribute the Class Settlement Amount in accordance with the Settlement Agreement.

Respectfully submitted on this 15th day of March, 2024.

/s/ David H. Miller
David H. Miller
Victoria E. Guzman
THE WILHITE & MILLER LAW FIRM
1600 Ogden Street

Denver, Colorado 80218
303.839.1650
dhmiller@wilhitelawfirm.com
vguzman@wilhitelawfirm.com

*Counsel for the Plaintiff*

/s/ Ryan P. Lessmann
Ryan P. Lessmann
Evan H. Smithers
JACKSON LEWIS, P.C.
950 17th Street, Suite 2600

Denver, Colorado 80202
303.892.0404
ryan.lessmann@jacksonlewis.com
evan.smithers@jacksonlewis.com

*Counsel for the Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 15th day of March, 2024, I electronically filed the foregoing Joint Motion through the Court's CM/ECF System, which automatically generated a copy of this document to all counsel of record in this case.


_/s/ Carmen Ortega_
Carmen Ortega